WAX *et al. v.* POPE.

(Division A. May 11, 1936.)

[168 So. 54. No. 31829.]

Jones & Stockett, of Woodville, and Charles A. Holcombe, of Baton Rouge, La., for appellants.

**W. F. Tucker,** of Woodville, for appellee.

788

H. V. Watkins and Ralph B. Avery, both of Jackson, for appellee.

Argued orally by **Charles A. Holcombe** and **A. H. Jones** for appellant and by **Ralph B. Avery** for appellee.

**Cook, J.**, delivered the opinion of the court.

Appellee, L. H. Pope, filed a bill of complaint in the chancery court of Wilkinson county against Louis A. Wax, Sr., and the Wax Lumber Company, a corporation, alleging an oral agreement between the appellee

and Louis ·A. Wax, Sr., to purchase certain sawmill properties and to operate the same on a partnership basis, or by means of a corporation to be organized by them, the purchase of the property by the said Wax in his own name, and the subsequent sale thereof to the Wax Lumber Company in violation of the agreement between appellee and the said Wax, and without the knowledge and consent of appellee. The bill further alleged that the said Louis A. Wax, Sr., took title to· the said property, as trustee, for the appellee to the extent of one-half interest therein, and that before the transfer of the property to the Wax Lumber Company, the appellee contributed certain machinery and an undisclosed amount of cash toward the rehabilitation of the sawmill plant so purchased in the name of Wax.

The prayer of the bill was that the court grant a decree declaring that one-half of the property, rights, and privileges conveyed to the said Louis A. Wax, Sr., and one-half of all property acquired by purchase with the profits of the mill, or money borrowed on manufactured lumber, was the property of appellee; that the said Louis A. Wax, Sr., held the same as trustee for appellee; that the apparent title to one-half thereof be divested out of said Wax and fully vested in appellee, or that the said Wax, as trustee, be declared to be indebted to the appellee in a sum equal to one-half of the proven value of the said mill and property, also one-half of the value of the manufactured lumber, logs, and cash on hand derived from the profits, the value of the property, and money advanced by the appellee to repair the mill, all expenses incurred by the appellee in procuring the agreement for the purchase of the said property, and a sum equal to the amount drawn by the said Wax, Sr., from the corporation as salary, or from the profits of the mill, and that the said mill and all property acquired by said corporation be charged with the indebtedness found to be due the appellee.

The appellant Wax filed a sworn answer admitting that there was a tentative agreement between appellee and appellant Wax to purchase the said sawmill property and timber, if such a purchase could be consummated, and to operate the same on a partnership basis, but denying that any partnership was formed, or that the appellee discharged, or promised to discharge, any of the conditions and obligations necessary to be performed in the creation and formation of the alleged partnership. The answer of the appellant Wax further denied that there was ever any agreement that the appellee and the said Wax should purchase, own, and operate the property on an equal partnership basis and should share equally in profits. This answer further alleged that, before the formation of the Wax Lumber Company and the transfer of the property to it, the appellee was fully advised as to all the details of the negotiations for the purchase of said property and the proposed formation of the partnership, or corporation, to operate the same, and was called upon to contribute a proportionate part of the cost of the property and to pay in his proportionate part of the capital or stock of the proposed partnership or corporation; but that he refused to contribute anything for the purpose. The answer further denied that the appellee furnished any material at the request, or upon the authority, of the said Wax, but admitted that machinery belonging to the appellee, of the value of two hundred nineteen dollars and thirty-eight cents, was used in placing the sawmill plant in a condition to be operated. All other averments which materially affect the alleged liability of the appellants were denied.

The appellant Louis A. Wax, Sr., made his answer a cross-bill, and alleged therein that on April 26, 1933, he entered into a contract with the appellee to purchase certain lumber then on the yards of the Holden Lumber Company, at Holden, La., for a consideration of two

thousand dollars, and that appellee agreed and bound himself to liquidate this lumber at the earliest possible moment, and to the best advantage, and out of the proceeds first pay such obligations as insurance, taxes, loading expenses, a small remuneration for the appellee, and an indebtedness due certain creditors of the Holden Lumber Company not to exceed seven hundred twenty-five dollars, and next repay the said Wax the two thousand dollars advanced by him. This contract further provided that after all the named expenses and charges had been paid, the balance derived from the liquidation of the lumber should be divided equally between the appellee and Wax "to be used to further the operation in prospect at Woodville, Mississippi."

The cross-bill then alleged that, acting under the provisions of this contract, the appellee had sold the lumber covered thereby, and had appropriated the proceeds to his own use, and refused to account for the same; and that, consequently, the appellee was indebted to the said Wax in a large sum. The cross-bill further charged that the entire agreement between the appellee and Wax for the prospective formation of any partnership or corporation was dependent on the faithful discharge of the obligations of the contract for the sale of said lumber; and charged, in detail, the breach of the contract and the failure and refusal of appellee to account for the proceeds of the sale of the lumber, or to advance any money for the formation of the proposed partnership or corporation.

The prayer of the cross-bill was for an accounting between the appellee and the said Wax, and a decree against the appellee for the sum found to be due by him to Wax.

Upon the proof offered on the hearing of the cause, a decree was entered declaring that the said Louis A. Wax, Sr., took title to all the property conveyed to him by the receiver of the Eicher Woodland Lumber Com-

pany, and afterwards conveyed by him to the Wax Lumber Company as trustee for himself and appellee, each owning a half interest therein, and adjudging that the appellee was the owner of a one-half interest in all the property so conveyed, and also a half interest in all the property afterwards purchased or acquired with the profits earned by the operations of the Wax Lumber Company, and a half interest in all cash on hand and all property of every kind, character, and description then owned by the said Wax Lumber Company. It was further ordered that in an accounting between the parties, the appellee should be charged with one-half of the original purchase price of the property, and credited with the sum of six hundred fifty one dollars and eighty-eight cents, as the value of certain machinery alleged to have been furnished by him for the repair of the said mill plant, and also the amount of cash, if any, furnished for that purpose; and a master was appointed to state an account between the parties.

Counsel for appellee concede, as we think they must, that the decree of the court below is erroneous in so far as it adjudicated that the legal title of all the property of the Wax Lumber Company is in appellee and charged the Wax Lumber Company as such with liability for a breach of trust, and, as we understand the brief of counsel, they suggest that a modified personal decree be entered here against L. A. Wax for one-half of the present value of said property, subject to debts, if any, owing by the appellee to Wax.

The pleadings and the trial in the court below proceeded throughout on the theory that the conveyance of the land, timber, and property described in the deed exhibited with the bill of complaint, to the appellant Wax, in pursuance of a prior oral agreement between said Wax and appellee to purchase said property and operate it as a partnership or corporation, created an enforceable trust in favor of the appellee for a half inter-

est in said property. The testimony in this record bearing upon all the issues is very indefinite and unsatisfactory. Appellants offered no evidence in support of their answer, or the cross-bill seeking an accounting on the Holden Lumber Company contract, but submitted the cause on the very indefinite testimony offered by the appellee as to the terms of the oral agreement between him and the said Wax. As we understand the testimony of appellee, and the admissions therein, they strongly tend to show an indebtedness to the appellant Wax under the Holden Lumber Company contract which would entitle him to an accounting, but we have reached the conclusion that the transaction between these parties touching the Eicher Woodland Lumber Company property did not create an enforceable trust.

The evidence is sufficient to establish an oral agreement between the appellee and the appellant Wax to purchase the property of the Eicher Woodland Lumber Company, then in receivership, and operate the same on some indefinite basis, either as a partnership or a corporation to be organized in the future. More than a month before the receiver of the Eicher Woodland Lumber Company, under the authority of the chancery court of Wilkinson county, Miss., conveyed the said property to the appellant Wax, the said Wax advised the appellee, in writing, that he contemplated taking the title to this property in his own name, which he afterwards did, and personally assumed the payment of the entire purchase price. The appellee acquiesced in this arrangement, making no objection or protest, either to Wax, or the receiver, or the court, and making no offer, prior to the conveyance and subsequent resale of the property, to advance or assume any part of the purchase price thereof.

As announced in 65 C. J. p. 250, sec. 35, "a verbal promise or agreement by the grantee in an absolute conveyance, either prior, contemporaneous or subsequent to

the conveyance, to hold the land conveyed in trust for the grantor or other designated persons, does not create an enforceable trust under the statute of frauds, unless the circumstances surrounding the transaction are such as to show a resulting or a constructive trust; and the grantee takes the absolute title the same as though the agreement had not been made.'' It then remains to consider only whether or not the circumstances surrounding the transaction here involved show a resulting or a constructive trust. That no resulting trust was created by this conveyance, wherein Wax took title to the property for the alleged mutual benefit of himself and the appellee, is clear under the decisions of this court, and the authorities generally. In Bush v. Bush, 134 Miss. 523, 99 So. 151, 152, this court quoted with approval the rule announced in 3 Pomeroy's Equity Jurisprudence (3 Ed.) sec. 1037, that in order to create a resulting trust by the purchase of land, under an oral agreement to hold the same for the benefit of another, ''it is absolutely indispensable that the payment should be actually made by the beneficiary or that an absolute obligation to pay should be incurred by him as a part of the original transaction of purchase at or before the time of the conveyance. No subsequent and entirely independent conduct, intervention or payment on his part would raise any resulting trust.'' In that case the court further announced the rule that ''the facts creating the trust must exist at the time of the conveyance; for it is the money which has gone to the vendor as an inducement to the conveyance that creates the equity called a resulting trust. After the title has been conveyed the application of the funds of another to pay the purchase money for the land creates no trust in favor of such other. The trust arises, if at all, at the time of the conveyance.''

Conceding for the purpose of this decision only that the tentative oral agreement between appellee and Wax

created a fiduciary relation between them, the mere non-performance of the agreement, in the absence of fraud or bad faith, did not create a constructive trust and authorize a court of equity to compel performance. As said in 26 R. C. L. 1244, "there must be a salutary and proper limitation of the doctrine of parol trusts, and it will be found in confining the equity to enforce trusts arising out of parol agreements to transactions involving some element of fraud or of bad faith, apart from the mere breach of the agreement itself, which makes it inequitable that the vendee should hold the legal title absolutely or discharged by any trust." There is no evidence in this record of fraud or bad faith on the part of Wax at the time the conveyance was made. On the contrary, he fully advised the appellee of his purpose and the reasons therefor, and the appellee by his inaction consented thereto. The inference from the very indefinite testimony bearing upon the subsequent dealings between the parties is that the failure to consummate the original oral agreement was due to disagreements between them as to the terms of the agreement, and we have reached the conclusion that the evidence bearing upon these issues is too indefinite to establish such improper conduct, fraud, or bad faith as would give rise to a constructive trust.

The decree of the court below will therefore be reversed, and the cause remanded.

Reversed and remanded.