ANTHONY *et al.* *v.* BANK OF WIGGINS.

(Division B.   Nov. 21, 1938.)

[184 So. 626.   No. 33350.]

886

T. J. Wills, of Hattiesburg, for appellant.

U. B. Parker, of Wiggins, for appellee.

**McGehee, J.,** delivered the opinion of the court.

The appellants became indebted to the Bank of Wiggins in the sum of $700 on April 3, 1930, as evidenced by a promissory note due twelve months after date and secured by a deed of trust on 160 acres of land in Stone County, Mississippi. Default was made in the payment of the indebtedness, and the land was duly and legally advertised by the trustee for sale on March 6, 1933; and was purchased at the sale on that date by a representative of the bank for the sum of $75. The appellants re-

mained in possession of the land for some two or three
years without formal demand being made of them by
the bank to surrender possession. Finally the bank in-
stituted an unlawful entry and detainer proceeding for
the possession of the land, recovering a judgment in
that behalf, and the judgment was reversed and the pro-
ceeding dismissed on appeal to this Court on April 12,
1937, for the reason that the same was not instituted
within the time required by Section 3456 of the Code of
1930, the decision being reported in 178 Miss. 361, 173
So. 454.

Thereafter, the appellee brought the present suit in
chancery on the 5th day of May, 1937, which was more
than six years after the due date of the note secured by
the deed of trust hereinbefore mentioned, and the bill
of complaint herein alleges that the appellee is the legal
and equitable owner of the land in question and entitled
to a decree either cancelling the claim of the appellants
and confirming the title of appellee, or in the alternative
ordering a second foreclosure of the security against
the land in the event the sale of March 6, 1933 should be
held invalid. The chancellor decreed that the foreclos-
ure and sale of the land referred to was valid, and can-
celled the claim of the appellants, confirmed the title,
and granted a writ of possession as prayed for.

Appellants invoke the Statute of Limitations, Code
1930, Section 2292, on the ground that the present suit
was not brought until more than six years after the due
date of the note. The statute, however, is not applicable
for the reason that the chancellor did not grant relief on
the note or decree a further foreclosure of the deed of
trust in accordance with the alternative prayer of the
bill of complaint, but as heretofore stated he held that
the security had already been validly foreclosed and that
the appellee was the owner of the land involved. If he
was correct in holding that the sale was valid, then the
purchaser was entitled to the relief granted at any date

subsequent to the sale unless such relief should have become barred by some limitation of adverse possession.

It is further contended by the appellants that the foreclosure sale of March 6, 1933, was void on two grounds: (1) That the same was made during the afternoon after the appellee had received notice on the morning of March 6, 1933, of the Presidential Proclamation closing all banking institutions in the United States, and prohibiting them from transacting any banking business whatsoever; and (2) because of the inadequacy of the price paid for the land at the trustee's sale.

The Proclamation of the President was issued under what he conceived to be an authority vested in him by virtue of the provisions of Sec. 5 (b) of the Act of Congress of October 6, 1917, 40 Stat. 411. This was done under Sec. 5(b) of the Act known as the ''Trading With The Enemy Act,'' limited in its application to the period of the World War. Section 95, U. S. C. A., Title 12, pp. 352, 353. The first proclamation, No. 2039, issued on March 6, 1933, was followed by his second proclamation, No. 2040, issued on March 9, 1933, after the Congress had passed an act on that date, being Chap. 1, Sec. 2, 48 Stat. 1, Sec. 95a, Title 12, U. S. C. A., p. 361, granting such authority, and approving what had been done by the President in the premises.

An historical note is found on page 361, Title 12, U. S. C. A., as follows: ''As originally enacted by Act of Oct. 6, 1917, c. 106, Sec. 5 (b), 40 Stat. 415, this section formed a part of the Trading With The Enemy Act, which was limited in its application to the World War and therefore was omitted from the Code, but printed as an appendix to Title 50 U. S. C. A. By Act of Mar. 9, 1933, c. 1, Sec. 2, 48 Stat. 1, the section was made applicable to any war 'or any other period of national emergency declared by the President,' thus making it general and permanent legislation.''

Thus it will be seen that although the banking institutions of the United States, out of a commendable spirit of co-operation in a time of economic crisis, general-

ly obeyed the Presidential Proclamation of March 6, 1933, there was no authority in law for the issuance of such a proclamation until March 9, 1933. We are of the opinion that even though a sale by a trustee on March 6, 1933, under foreclosure proceedings theretofore legally advertised should be considered as transacting banking business, the approval by the Congress on March 9, 1933, of the President's action in closing the banks would not have the retroactive effect of rendering illegal that which had been legally done on March 6, 1933.

On the second objection, however, to the validity of the sale, the record discloses that the land was in fact sold for an inadequate price. It is shown to have been worth on that date the sum of $1,000 to $1,200. But the indebtedness then held by the bank against the land, including interest and several years' taxes, amounted to as much as the land was shown to be worth; and the appellants are also shown to have been totally insolvent, and no deficiency judgment has been taken against them. Moreover, the indebtedness was barred by the Six Year Statute of Limitation at the time of the filing of this suit to confirm appellee's title. Thus, it will be seen that the appellee bank has in a manner paid all that the land was worth. If the appellants were seeking affirmative relief equity would require a tender of the indebtedness due. Ordinarily, mere inadequacy of price alone, in the absence of fraud or unfair advantage, will not be sufficient to warrant the setting aside of a sale. Hardin et al. v. Grenada Bank et al., 182 Miss. 689, 180 So. 805.

Even though the appellants here are seeking no affirmative relief, we are of the opinion that under all the facts and circumstances we would not be warranted in denying the appellee the relief prayed for, due to mere inadequacy of price alone, where no fraud or unfair advantage is shown to have been taken of the appellants in connection with the foreclosure sale.

The decree of the court below will therefore be affirmed.

Affirmed