HARRIS *v.* BAILEY AVENUE PARK, INC., *et al.*

(Division A. Nov. 10, 1947. Suggestion of Error Overruled Feb. 9, 1947.)

[32 So. (2d) 689. No. 36529.]

Wm. Harold Cox, of Jackson, for appellant.

Ernest **L. Shelton, Lamar F. Easterling** and **J. E. Skinner,** all of Jackson, for appellees.

Argued orally by **Wm. Harold Cox,** for appellant, and by **Ernest L. Shelton,** for appellees.

**McGehee, J.,** delivered the opinion of the court.

This suit was brought in Chancery on October 24, 1944, by M. B. Brown and others as stockholders of the appellee, The Bailey Avenue Park and Negro State Fair Grounds of the Colored Men's Business Association of America, Inc., and they seek to have cancelled the claim of ownership asserted by the appellant Henry M. Harris under and by virtue of his purchase at a foreclosure sale, held on May 4, 1934, under a deed of trust given in his favor by the said corporation on November 3, 1930, of approximately twenty acres of land, located about a half mile north of the City of Jackson, and now shown to worth two and a half to three times its then value.

The principal ground relied upon for the cancellation of the title claimed by the appellant is that he acquired the property at the foreclosure sale as a constructive trus-

tee for the use and benefit of the said corporation, of which he was then a director and an alleged vice-president, although the deed of trust was legally authorized and validly executed by the said corporation in his favor for a cash loan, originally made to the corporation in 1928, for the sum of $3,800, but which thereafter renewed from year to year, the last renewal thereof being on said November 3, 1930, for the sum of $4,000.

The bill of complaint also prayed for an accounting as to the revenues derived by the appellant from the operation of the Mississippi Negro State Fair on the said land during his possession of the same in order that the appellee corporation might be credited therewith against any indebtedness that may be found to be due and owing to the appellant; and the bill further prays that he be required to convey the legal title of the land to the said corporation upon payment to him of any indebtedness found to be due under such an accounting.

In the original bill the corporate appellee was also named as a defendant along with the appellant Harris, and the Mississippi Negro Agricultural Exhibit Corporation, and others, none of whom, except the said appellee former owner and the appellant, were claiming any sort of title or connection with the property involved.

Thereafter on May 5, 1945, the erstwhile former owner and defendant, the appellee Bailey Avenue Park and Negro State Fair Grounds of the Colored Men's Business Association of America, Inc., became a complainant along with the said M. B. Brown and others in an amended bill and joined in the prayer thereof for relief. And the appellees contend that by agreement with a former attorney of all the defendants to the original bill, the trial court was authorized to deal with the amended bill as if the same had been filed at the time of the filing of the original on October 24, 1944, and which date it will be observed was nevertheless more than ten years after the foreclosure of the deed of trust in question.

The trial court held that the appellant acquired the property as a constructive trustee for the use and benefit of the mortgagor; that the statute of limitations was not applicable in favor of such trustee; and awarded the immediate possession of the same to the appellee corporation. Thereupon, this interlocutory appeal was granted to settle the controlling principles of law involved and so as to avoid the expense of having the accounting which was asked for until and unless the interlocutory decree should be affirmed on appeal and the cause remanded for that purpose.

We think that the situation presented a proper case for the allowance of this interlocutory appeal.

The proof disclosed that the appellant, while serving as a director in the appellee corporation during the year 1928, borrowed the said sum of $3,800 from a local bank in Jackson on his own private property and loaned the same to the corporation on its note and deed of trust on the twenty acres of land here involved, which instruments were duly executed as aforesaid, and by the complainants M. B. Brown, as president, and S. A. Adams, as secretary, of the appellee corporation, after the said officials had been duly authorized to execute the same. This was likewise true as to the renewals, the last of which were foreclosed on the said 4th day of May, 1934.

That at the time the appellant made this loan the said corporation was in serious financial difficulties and owed, among other debts, an indebtedness in favor of one L. A. Cato which was secured by a deed of trust on a part of the twenty acres of land, and another one in favor of L. L. Posey and his wife Mrs. Mattie R. Posey secured by a deed of trust on the remainder of said land. That there were no second mortgage loans obtainable on real estate from any local bank or elsewhere at that time. That upon failure to pay any of said loans, and at the instance of one of the creditors, L. L. Posey, who was the attorney for all of the parties in interest, the Mississippi Negro Agricultural Exhibit Corporation was organized in 1933 for the

purpose of raising funds with which to take care of these pressing obligations and liens upon the real estate of the said appellee corporation, but which plan proved to be a failure for the reason that only the sum of $602 was ever paid in for the capital stock of this new corporation, and no stock therein was ever issued.

It is further shown without dispute that the appellant had prior to the foreclosure sale made repeated requests to the appellee corporation for the repayment of his loan, but that no attention was given to the same; that the said debtor, being wholly without funds, ceased to function as a going concern after the Negro State Fair was held in 1932, and there was no meeting of its directors from that time until 1944 after this suit had been filed; and that in 1933 the Fair was operated by appellant at the instance of the prior lienors.

That the deed of trust in favor of the appellant contained an unusual provision to the effect that upon default in the payment of the indebtedness therein mentioned the trustee L. L. Posey, Jr., should, "at the request of L. L. Posey or Mrs. Mattie R. Posey, or either of them," sell all the property described in appellant's deed of trust by publishing a notice in a local newspaper for three consecutive weeks immediately preceding the sale and by posting a notice thereof at the courthouse. And it is shown without dispute that the foreclosure of the property in question was not had at the instance of appellant, and that he did not know that it was being foreclosed until some one called his attention to the newspaper notice thereof. That he did not know that the property had been bought in for him by the said L. L. Posey until sometime after the sale, since he had merely depended upon his said attorney to act for the best interest of all parties concerned in the matter. However, he took charge of the property following the foreclosure sale and the trustee's deed in his favor was duly filed for record on January 21, 1935. In other words, the proof failed to disclose that appellant was

guilty of any actual or concealed fraud in connection with said purchase of the property.

That at the time of the foreclosure sale there was due and owing on the prior deeds of trust held by L. A. Cato and Mr. and Mrs. Posey the total sum of $11,508, and the sum of $4,000 in favor of the appellant, plus one year's interest on the entire indebtedness and two years' taxes on the property. That the amount of the bid made for appellant by the attorney L. L. Posey was the sum of $1,000; that the purchase was of course subject to the prior liens; and there was no deficiency judgment ever taken or deemed worthwhile against the appellee corporation for any balance due; that such balance had prior to the filing of this suit become barred by the statute of limitations; and that, therefore, the cost of the property to the purchaser at said sale was the approximate sum of $16,000, and as he no doubt then realized.

That prior to the foreclosure sale, and during the year 1933, when the appellant in October of that year operated the Mississippi Negro State Fair at the instance of the said L. L. Posey, who represented the prior lienors, he accounted to the latter each day for the revenues therefrom, the said M. B. Brown having "retired" as president of the appellee corporation at the close of the Fair in October of the preceding year and without having applied the revenues of that year's operation to the payment of any part of the indebtedness due under the prior deeds of trust and there being no successor to him or other person elected to operate the same.

That since the appellee corporation did not function as a going concern after the year 1932, and to all intents and purposes was a defunct corporation with the title of the Fair Ground site vested in appellant after May 4, 1934, it was further shown that beginning with the Fair held in October of that year and continuously thereafter the appellant has permitted some of the stockholders and officers of the Mississippi Negro Agricultural Exhibit Corporation, some of whom were also stockholders in the

appellee corporation, to assist him in the operation of the Fair, but that he has received and used for his own account and disbursed in his own name the revenues derived from such operation from year to year, and has continued to pay the taxes on the property. That he has reduced the prior indebtedness, to which his purchase at the foreclosure sale was subject, and now owes to the said Mrs. Mattie R. Posey, as an innocent encumbrancer for value, an indebtedness of only $5,000 thereon secured by a deed of trust given by him individually during the year 1941 on the property as his own.

That although the individual complainants and the corporate officials have continually resided in Jackson at all times since the appellant took possession of said property under the foreclosure sale, none of them have ever requested any accounting as to any revenues derived by him therefrom.

On this appeal it is urged by the appellees that the decree of the trial court must be affirmed on the ground that the same is based upon conflicting evidence on the question of whether or not (1) the appellant acquired the property in good faith and for a fair value, (2) whether he purchased the same after sufficient notice to the other directors and officers of the corporation that a foreclosure sale was to be held, and (3) as to whether he and they have at all times understood and intended that he should hold the title as trustee for the benefit of the appellee corporation.

There is no proof whatever that the purchaser at the sale was guilty of any actual fraud, and we are of the opinion that there is no substantial evidence to show that the property was not purchased at a fair price under the conditions existing during such a depression; it was not purchased for a grossly inadequate consideration. It is to be remembered that the sale occurred in 1934 and at a time when there were no purchasers for property who would have been willing to pay full value in cash under the conditions then existing throughout the country. One

of the witnesses, Swep S. Taylor, a local realtor and appraiser for the Reconstruction Finance Corporation, testified that in his opinion the property was then worth from $12,000 to $14,000, and there is some evidence to the effect that there was an unsuccessful attempt to sell the same at $19,000 sometime after the foreclosure. The other witness as to its value stated that in his opinion the property was then worth $1,500 per acre or $30,000. At any rate, it can not be said that it brought less than a fair price at a forced foreclosure sale.

In the case of Federal Credit Co. v. Boleware, 163 Miss. 830, 142 So. 1, 2, it is said: ''In the absence of irregularity in the manner of conducting the public sale provided for in the contract, mere inadequacy of the price will not operate to set the sale aside, unless it is so gross as to furnish evidence of fraud, and there must be an inequality so strong, gross, and manifest that it must be impossible to state it to a man of common sense without producing an exclamation at the inequality of it. The sale in the case at bar was openly and fairly conducted, and furnishes the best evidence of the market value of the thing sold.'' Citing cases.

In Weybburn v. Watkins, et al, 90 Miss. 728, 44 So. 145, 146, the Court said: ''The testimony in this case establishes the fact that the land was sold for about 40 per cent. of its actual value. It is settled law, however, in this state, that a sale of land made by a trustee, otherwise valid, will not be set aside for mere inadequacy of price, unless the inadequacy is such as to shock the conscience. While the sale of this land was for less than its actual value, we would be unwilling to disturb the sale on that account.''

And in the case of Anthony et al. v. Bank of Wiggins, 183 Miss. 885, 184 So. 626, the Court recognized that the land there sold at a foreclosure sale was worth more than the price bid therefor, but reaffirmed the rule that mere inadequacy of price alone, in the absence of fraud or unfair advantage, will not be sufficient to warrant the setting aside of a sale, citing the case of Hardin v. Grenada Bank

et al., 182 Miss. 689, 180 So. 805. And in determining whether the price in the Anthony case was grossly inadequate, the Court took into consideration that the debtors were shown to be totally insolvent, that no deficiency judgment had been taken against them, and that the indebtedness was barred by the statute of limitations at the time the suit was filed. We must therefore take this last-mentioned fact into consideration in the instant case, and assume that in reality the appellant paid the amount of the indebtedness of $4,000 due him, plus two years' taxes and the $11,508 due on prior liens, plus one year's interest on all three loans, and when this is done we do not think it can be said that the price paid is grossly inadequate.

As to whether the sale is voidable for lack of proper notice to the appellee corporation, its officers and directors as to the foreclosure, or whether the appellant was guilty of concealed fraud in failing to give a sufficient notice that the deed of trust was being foreclosed, it should suffice to say that the property was advertised for sale in the manner contracted for and expressly provided in the deed of trust. This was the notice which the parties themselves agreed upon when the deed of trust was executed, and was all the notice required by Section 888, Code 1942, Section 2167, Code 1930.

In 37 Am. Jur. 136, Section 691, it is said: "In some jurisdictions personal notice or notice by mail of intention to exercise a power of sale is required by statute. But if there is no statute requiring notice to be given by the mortgagee or trustee to the mortgagor of the intention to exercise a power of sale in a mortgage or deed of trust, and provision has been made in the mortgage or trust deed only for notice by advertisement in a given manner, no notice other than such advertisement is necessary to the validity of a sale under the power."

The cases chiefly relied upon by the appellees as requiring any additional notice are the few cases of which Marr v. Marr, 73 N. J. Eq. 643, 70 A. 375, 133 Am. St. Rep.

742, and Union Ice Company v. Hulton, 291 Pa. 416, 140 A. 514, are typical, but we do not think that those cases are either applicable or controlling here, in view of the particular facts there involved. For instance, in Marr. v. Marr, supra, the president, and sole creditor of the corporation purchased the corporate property under his own judgment in a suit in which it was his duty to make a defense or take an appeal if the interest of the corporation should require, and the opinion recites that he was the only one interested in the management of the corporation. A similar factual situation was involved in the case of Union Ice Company v. Hulton, supra. In the case at bar, however, there was an express *contract* as to what notice should be given, and where the parties have agreed upon the notice required, no other is necessary. All that is required is that the sale at which a corporate director becomes a purchaser shall be regularly and fairly conducted, and made at a reasonably fair price when he is the creditor with an interest of his own to protect, and under the terms and conditions prescribed by the deed of trust.

The evidence was in conflict in the instant case as to whether or not the other directors and the officers of the appellee corporation knew in advance that the deed of trust was being foreclosed. One of the directors testified that he knew about it and that he told the secretary, and that he discussed it with the other directors. His testimony in that regard was disputed, but the chancellor made no finding of fact in the record in regard thereto, but assuming, as we must do, that the conflicts in the evidence on the three issues of fact hereinbefore mentioned were resolved by the chancellor in favor of the appellees, we do not think that such findings, if upheld here, are controlling in this case or that they should result in setting aside the foreclosure sale in question, under the applicable principles of law herein stated.

On the question as to whether or not the sale is voidable merely on the ground that the appellant was admittedly

a director, and an alleged officer whose election is not shown by the minutes and is denied by the secretary, of the appellee corporation, both at the time he made the loan to it and took the deed of trust and at the time of the foreclosure sale, it is said in 13 Am. Jur. 960, Sec. 1009, that: "Wherever the doctrine obtains that a director may deal with the corporation and may take security, it follows logocally that he has the right to purchase at a judicial or other public sale in order to protect his interest. Accordingly, a director of a corporation may lawfully purchase property of the corporation at a foreclosure sale thereof on a mortgage given to him." And as fully sustaining the right of the appellant in the case at bar to acquire a valid title at a foreclosure sale, under the circumstances hereinbefore stated, see also 13 Am. Jur. 986, 987, 958, Sections 1042, 1043, 1005; 14A C. J., Secs. 1902, 1904 1905, pages 133, 134, 135; 19 C. J. S., Corporations, Secs. 799, 801, 802; and Twin-Lick Oil Company of West Virginia v. Marbury, 91 U. S. 587, 23 L. Ed. 328. In the last above cited case, which referred to as "a leading case on the subject" in the annotation at page 448, 76 A. L. R., it is held that a loan of money to a corporation by one of its directors, openly and in good faith, and a subsequent purchase of its property at a fair public sale under a deed of trust executed to secure the payment of the money so loaned, are valid transactions.

In Gallogly v. Stender, 51 R. I. 303, 154 A. 280, 282, 76 A. L. R. 435, it is said: "The modern doctrine does not condemn a purchase at forced sale of corporate property by a director or officer of the same if the sale was not brought about by his procurement, and especially is this true when he purchases to protect a valid interest previously acquired. To hold otherwise would deprive a director or officer of a corporation, who is also a creditor, of the benefit of the security on which he made the loan."

In the elaborate annotation contained in A. L. R. under the foregoing decision, which sets forth the holding of the

various jurisdictions on this particular feature of the present case, there is no decision of our Court cited on the question, and no case has been called to our attention in the briefs of counsel on this appeal which holds contrary to the principle last above quoted.

But, the appellees say that they understood that the appellant was merely exercising control of and operating the property as a Negro state fair in order that he might reimburse himself for the sums paid out under the prior liens, and to collect the amount due on his loan which had been foreclosed, and that they did not know until shortly before the filing of this suit that he was claiming the land as his own. However, it is not contended that there was any agreement to this effect either before or after the sale, but merely that he expressed an intention from time to time and that they were thereby led to think that the land would always be used as a Negro state fairground, and that he cannot therefore be heard to say that he has not been holding the title since he acquired the same at the foreclosure sale as a trustee for the benefit of the appellee corporation. The expression of intention above referred to was not intended to inure to the benefit of the appellee corporation, which had long since ceased to function, but was an expression of willingness, according to the proof in this record, in regard to what he intended should be done with the property either under his own control or by the new corporation, Mississippi Negro Agricultural Exhibit Corporation, of which he was then the president. At any rate, Section 3348, Code 1930, Code 1942, Sec. 269, provides that "hereafter all declarations or creations of trusts or confidence of or in any land shall be made and manifested by writing, signed by the party who declares or creates such trust, or by his last will, in writing, or else they shall be utterly void; . . ."

And, in 26 R. C. L. 1244, it is said that: "There must be a salutary and proper limitation of the doctrine of parol trusts, and it will be found in confining the equity to enforce trusts arising out of parol agreements to tran-

sactions involving some element of fraud or of bad faith, apart from the mere breach of the agreement itself, which makes it inequitable that the vendee should hold the legal title absolutely or discharged by any trust.'' This announcement is quoted with approval in the case of Wax et al. v. Pope, 175 Miss. 784, 168 So. 54, 57. And, we do not think that there is any evidence in this record of any fraud or bad faith on the part of the appellant in regard to his expression of an intention as to what he desires to do with the property, either under his own supervision or that of his codefendant, Mississippi Negro Agricultural Exhibit Corporation, whenever the same shall have become free of all indebtedness. As to whether or not the doctrine of laches, the application of which is left to the sound discretion of the chancellor, as held in the case of Sample v. Romine, 193 Miss. 706, 8 So. (2d) 257, 9 So· (2d) 643, 10 So. (2d) 346, or the ten-year statute of limitations should be applied, becomes immaterial, in view of the conclusions hereinbefore stated, but we call attention in passing to Section 2289, Code 1930, Code 1942, Sec. 718, which provides:· ''When a mortgagee, after condition broken, shall obtain the actual possession or receipt of the profits or rent of land embraced in his mortgage, the mortgagor, or any person claiming through him, may not bring a suit to redeem the mortgage but within ten years next after the time at which the mortgagee obtained such· possession or receipt, unless in the meantime an acknowledgment of the title of the mortgagor, or of his right of redemption, shall have been given in writing, signed by the mortgagee, or the person claiming through him; . . .''.

We are of the opinion that under the decision and the texts hereinbefore cited throughout this opinion, the chancellor was in error in holding that the appellant acquired the property in question as a constructive trustee and in awarding the possession thereof to the appellee corporation; and that, therefore, the decree appealed

from must be reversed and the bill of complaint dismissed for the reason that the appellant is shown to be the owner of the fee-simple title to the property in controversy.

Reversed and judgment here for appellant.