ETHRIDGE, Chief Justice
(dissenting).
This case involves a contract of two of the three directors of a small corporation and an employee, by which one director and the employee agreed to pay the other director for refraining from bidding against them at a federal tax sale. The question is whether this contract is enforceable. With deference to my colleagues joining in the controlling opinion, I think it is not. First, this is a contract which plainly says on its face that it was for the purpose of getting Berrong, a director and apparently a dominant party, “to refrain from bidding against them for * * * assets” of the corporation. Berrong had no lien. Second, this director (appellee) had fiduciary duties to the corporation, its stockholders and creditors. Both of these undisputed factors and *643 the great weight of authority, in my opinion, require a holding that the contract is against public policy and unenforceable. Moreover, the controlling opinion gives corporate directors a wider latitude in negotiating and contracting among themselves for insolvent corporate assets than any of the courts have thus far allowed.
The general rule is that any act or agreement which tends to stifle or chill the bidding at a judicial sale vitiates it and constitutes ground for setting it aside. Further, a contract made for that purpose is unenforceable as against public policy. 50 C.J.S. Judicial Sales § 22 d, pages 608-610 (1947); 30A Am.Jur. Judicial Sales §§ 98-100 (1958); Annot., 14 A.L.R.2d 1267 (1950). The reason for this rule is that a judicial sale should be conducted so as to secure the best price that can be had for the property. To that end, full, free and fair competition should be secured.
There is a limited exception to this general rule that agreements to stifle or chill bidding at public sales are void as against public policy. It is that such a contract is enforceable between the parties (a) where the combination was for the purpose of protecting liens held by them, as in the Grand-berry case, or (b) where by reason of the magnitude of the sale, the parties individually would have been unable to participate in the bidding, and therefore agreed to purchase the property for their joint benefit. Grandberry v. Mortgage Bond & Trust Co., 159 Miss. 460, 132 So. 334 (1931); 30A Am. Jur. Judicial Sale §§ 99, 100 (1958). Neither exception exists here. Grandberry involved an agreement between several mortgagees of an individual’s property. It stated only that holders of these liens could agree in good faith about the bidding and division of proceeds. Berrong had no lien on the corporate property, and he was in a fiduciary relation to this insolvent business.
Fulgham v. Burnett, 151 Miss. 111, 129, 117 So. 514, 516 (1928), held that prospective bidders at a public sale cannot agree to refrain from bidding one against the other, and to do so renders the sale as to any confederate void. Moreover, Everett v. Hubbard, 199 Miss. 857, 25 So.2d 768 (1946), declined to extend Grandberry, “involving an agreement between lien holders interested in property to be sold under a deed of trust,” and held that it was not “an authority in regard to an agreement between a lienholder and the unsecured creditors of a wholly insolvent estate (by which one refrained from bidding at a commissioner’s sale), insofar as constituting a sufficient consideration to compel specific performance is concerned.” 199 Miss. at 865, 25 So.2d at 771. Everett limited the Grand-berry rule to agreements between lien-holders. These two cases must be considered in determining the limitations of the Grandberry case.
The question here is not, as the controlling opinion suggests, whether the agreement between Berrong and others is void because it actually stifled or chilled bids at the public sale; or whether Berrong entered into the contract with “honest motives.” The first would be almost impossible to prove in most instances. The second is irrelevant if the agreement was made to exclude a prospective bidder. This contract expressly states that it was for the purpose of getting Berrong to refrain from bidding, in short, to get him out of the list of possible or probable purchasers at the tax sale. That was the undisputed purpose, and Ber-rong agreed to take $3,000 for that right. Such a contract is unenforceable, since all of the parties to it are in pari delicto. Certainly appellee has not brought himself within the exception of the Grandberry case. An extension of that limited exception to a corporate director without a lien is without precedent. It would expand the power of directors to manipulate among themselves for the property of an insolvent corporation.
The following general rules illustrate the reasons of public policy for refusing to enforce a contract of the present type. A director or officer of a corporation has no right to purchase the corporate property at *644 a judicial or other public sale, and if he does so, the sale is voidable. However, this is subject to the qualification that, if the officer has a lien, or if there are other circumstances making it equitable to uphold the purchase, including good faith, fair dealing, and an adequate consideration, the purchase may be valid. 19 Am.Jur.2d Corporations §§ 1315, 1316 (1965). Directors and officers, although not trustees in a technical'sense, occupy a fiduciary relation to the corporation and to its stockholders. Knox Glass Bottle Co. v. Underwood, 228 Miss. 699, 89 So.2d 799, 91 So.2d 843 (1956). Further, the restricted rule permitting directors to purchase at a judicial sale of a solvent corporation is "even more limited” if the company is insolvent at the time of the forced sale. 3 Fletcher, Cyclopedia Corporation § 877 (1965). By the great weight of authority, the assets of an insolvent corporation are a trust fund for the benefit of the company’s creditors. 15A Fletcher, Cyclopedia Corporation §§ 7369, 7385 (1938); Payne v. Bullard, 23 Miss. 88 (1851).
Millsaps v. Chapman, 76 Miss. 942, 26 So. 369 (1899), applied these principles to a director, who purchased land belonging to an insolvent bank for considerably less than its value. It was held that directors are fiduciaries, and are forbidden to deal in property of the bank for their own personal advantage. At the option of the bank or its creditors, the sale may be set aside, or the fiduciary may be required to account for his profits. Cf. Harris v. Bailey Avenue Park, Inc., 202 Miss. 776, 32 So.2d 689 (1947) (director purchasing at foreclosure of his own mortgage upheld.) Frierson Building Supply Company v. Pritchard, 176 So.2d 301 (Miss.1965), is not applicable here. It did not deal with a contract expressly made for the purpose of removing a corporate director as a prospective bidder. Further, it recognized his fiduciary status.
In the instant case, the contract upon which Berrong seeks to recover the amount of his investment in this insolvent corporation was made by him as a director with another director and an employee for the purpose of removing him from the list of prospective bidders at the sale. Assuredly, it was a contract to stifle or chill the bids at the sale, by taking out a person who may have been the most interested bidder with resources. Obviously Miller, the other director, and Saunders thought he was, because they undertook to agree to pay him $3,000 to get him out of the way. The issue is not whether Berrong had “honest motives,” as the controlling opinion says. This contract on its face was executed to exclude competition. It stated it was for that purpose, and the testimony shows that Ber-rong and Miller admitted it. Twenty-five to thirty people were present at the sale, and about three bid on the property. Yet it sold for $4950, less than the tax lien of $5,000.
It is said, finally, that Berrong had an “interest” to protect, and thus could make this contract validly. The corporation was insolvent, and Berrong’s original $3,000 investment, representing his share of the capital stock, was lost irretrievably and could not be recovered legitimately under any circumstances. Thus Berrong entered into a plan with the other director and Saunders to convert a worthless investment into $3,-000, under circumstances that necessarily worked to the disadvantage of the creditors. Accordingly, Berrong had no legitimate interest to protect.
When the admitted reason for this contract is considered in the light of the facts that two of the three directors of the corporation joined in it, and they were fiduciaries for creditors of this insolvent company, the reasons of public policy for refusing to enforce such an agreement appear to me to be manifest. All parties to the instrument were in pari delicto, so the Court should refuse to assist any of them in its enforcement. For these reasons I would reverse, and render judgment here for appellant.
GILLESPIE, JONES and BRADY, JJ., join in this dissent.