I.
On July 7, 1981, Hollis C. Cheek, complainant below and appellant here, filed against his ex-wife, Pamela B. Cheek, now Mrs. Pamela B. Cheek Ricker, a bill to change child custody. He alleged a material change in circumstances since the divorce of the parties and the original award of custody of their son, who will be nine years old on July 22, 1983. He argued that, as a result of this change of circumstances, custody of the child should be placed with him.
The chancellor listened carefully and patiently to all of the evidence in an unnecessarily adversary proceeding and in the end declined to alter the substance of the original custody order. Intimating that we possess more of the wisdom of Solomon than the chancellor, Hollis C. Cheek appeals to this Court. For the reasons stated below, we affirm.
 II.
There was far more contentiousness between the parties than there was conflict in the facts at the trial below. We will summarize briefly the facts which seem pertinent to the disposition of this appeal.
Hollis and Pamela were married in Leake County, Mississippi, on December 15, 1967. They have one child, a son, Zachary Chase Cheek, who was born July 22, 1974. Chase was adopted.
Hollis and Pamela finally separated in early 1978. On July 11, 1978, the Chancery Court of Attala County, Mississippi, entered a final decree of divorce forever dissolving and declaring for naught the bonds of matrimony theretofore existing between them. The divorce was granted on grounds of "irreconcilable differences". See Miss. Code Ann. § 93-5-2 (Supp. 1982).
Incident to the divorce proceedings each party acknowledged that the other was a fit person to have custody of the child. In their joint bill for divorce filed May 8, 1978, Hollis and Pamela each stated under oath:
 The said Pamela B. Cheek is a fit and suitable person to be awarded the permanent and primary care, custody, and control of said minor child, with reasonable visitation on the part of the said Hollis C. Cheek. The said Hollis C. Cheek is likewise a fit and suitable person to be awarded the custody of said child, but the parties feel that the best interest of said child would be that the mother have the primary custody.
In reliance upon these representations, the Chancery Court entered a final decree of divorce on July 11, 1978, and provided that
 Pamela B. Cheek is awarded the permanent and primary care, custody, and control of the minor child Zachary Chase Cheek, . . . . Hollis C. Cheek shall have the right of reasonable visitation of said child at all reasonable times and places, including the right to have said child visit with him as agreeable to the said Pamela B. Cheek.
After the separation but prior to the divorce Pamela moved to Starkville where she became a student at Mississippi State University. During this period of time she developed a romantic relationship with another man. Hollis was aware of this relationship on May 5, 1978, when he signed and swore to the statement in the joint bill for divorce that Pamela was a fit person to have custody of the child. This relationship ended in May of 1979. Upon her graduation from Mississippi State University, Pamela moved to Houston, Texas.
There was substantial testimony adduced at trial that, while Pamela and the child lived in Starkville, she was a good mother. Several credible witnesses testified that Pamela showed constant love and affection for her son, that she took him to church regularly and that she otherwise fulfilled her filial obligations to him.
In February of 1980, Pamela and her son Chase moved to Houston, Texas. There Pamela secured employment in the Marketing Department of Continental Telephone Company. She leased an apartment in what is supposedly the best school district in the area and enrolled Chase in a kindergarten. She joined the Clear Lake Baptist *Page 1142 
Church, which she and her son attended regularly.
At trial Pamela presented testimony from four witnesses who came from Houston, Texas, one of whom was her pastor at the Clear Lake Baptist Church. This testimony was substantial and impressive in support of the proposition that Pamela was a concerned, caring and loving mother.
In February of 1981 Pamela began seeing James C. Ricker, then age 44, who was married but separated. We are informed that shortly after the trial of this case Pamela and Ricker were married.
In the interim, Hollis C. Cheek had remarried. On March 30, 1979, Hollis married Sarah Lee Cheek, and the thrust of his positive proof at trial was that he was now in a position to provide a stable two parent environment for Chase.
The evidence was uncontradicted that the boy, Chase, was experiencing mental and emotional difficulties. The psychologist offered by Hollis testified that he had made this finding after his examination of the boy. He substantially attributed Chase's difficulties to Pamela's relationships with other men, and, to be sure, the evidence is clear that between May of 1978 and the time of trial Pamela had slept with two men to whom she was not married.
The psychologist offered by Pamela agreed that Chase was experiencing emotional problems. He attributed these problems, however, first, to the tensions any child would experience incident to the divorce and, second, to the fact that the child now found himself caught in the middle of a nasty custody fight. The psychologist called by Pamela credibly refuted the thesis advanced by Hollis' psychologist to the effect that the child's emotional problems were the product of Pamela's relationship with other men.
In a brief opinion, the Chancery Court summed up the evidence as follows:
 At the time the parties were divorced the Respondent [Pamela] was a student at Mississippi State University. After the divorce, the Respondent continued her education and graduated from that institution. After graduation she obtained employment with the Continental Telephone Company in Houston, Texas, where she is currently employed. Since the parties divorced, it is clear that the Respondent has demonstrated concern for her child's physical, mental and moral training. Her interests in the child are evident by the care she has demonstrated in locating a suitable kindergarten, schools and day care facilities, both in Mississippi and Houston, Texas. She has demonstrated a concern for spiritual matters in locating a church home in Starkville, Mississippi when she was a student there, as well as in Houston, Texas. This Court can only conclude that the Respondent loves her child and is interested in his well-being. It is obvious from the testimony in this case that the Respondent has erred in her conduct with other men; however, this conduct is not sufficient to render her unsuitable as a parent even though such conduct must be condemned.
The chancellor then concluded
 that there has been no material change in circumstances which would adversely affect the child in such a way to necessitate a modification of the custody decree.
 III.
As committed as the judiciary of this state is to faithful execution of the task of divining the best interest of the child, our prescience is limited. A mother and father who love their child, who act in good faith and as selflessly as human nature will allow, will find it difficult enough solving the unsolvable question of what custody arrangement is in a child's best interest. Yet, though their love for each other has ended, they are infinitely more capable of devising a workable custody plan than are the judges of this state.
Before the court today are two obviously mature adults. Each professes love and concern for their child, now almost nine years old. Upon a reading of the record below, it is difficult to believe that either would ever deliberately do anything that *Page 1143 
would seriously harm their child. It is equally difficult to understand why two such persons could not have privately resolved the disagreements which have led to this litigation. Suffice it to say that, if Hollis and Pamela each had devoted to their son one-half the energy and emotion they have brought to this custody fight, his best interests would have been better served.
It happens all too frequently that separated or divorced parents, for whatever reason, do not resolve custody questions among themselves. The ability to tolerate each other's frailties, though no doubt on the wane during the latter days of the marriage, seems to evaporate with the separation and subsequent divorce.
Sad experience has long ago taught us that the intervention of a third party is often necessary. That third party must possess the wisdom of Solomon, the patience of Job, and the humanity of Shakespeare. Beyond that he must be empowered by the state to make final binding decisions, subject only to appellate review.
These considerations have led this state to vest original power to hear all matters touching the custody and welfare of children in its chancery courts. Miss. Const. (1980) Art. 6, § 159; Miss. Code Ann. § 93-5-23 (1972). Appellate review, of course, is vested in this Court.
Institutional considerations dictate that this Court perform its appellate review function in cases such as this under the strict guidance of two well established rules.
First, a decree for child custody should not be modified so as to change custody from one parent to the other unless, subsequent to the original decree, there has been a material change in circumstances which adversely affects the child's welfare.O'Neal v. Warden, 345 So.2d 610, (Miss. 1977); Sistrunk v.Sistrunk, 245 So.2d 845 (Miss. 1971); Sanderson v. Seaney,224 So.2d 862 (Miss. 1969); Brocato v. Walker, 220 So.2d 340 (Miss. 1969); Bunkley and Morse's, Amis On Divorce and Separation inMississippi § 8.14 (1957 and 1980 supplement).
Psychological as well as legal considerations undergird this rule. The best interest of the child ordinarily requires a certain stability in the custody arrangement. Following a divorce the children ordinarily need "the stabilizing influence of knowing where home is". Bowden v. Fayard, 355 So.2d 662, 664 (Miss. 1978). And, once the question of custody has been adjudged, conservation of wear and tear on the time, the purse strings and the emotions of the parties dictates that the issue not be reopened unless circumstances really have changed and the change has adversely affected the child. Conservation of all too scarce judicial resources is likewise important.
Second, findings of fact made by a chancellor may not be set aside or disturbed on appeal unless manifestly wrong.[1] See, e.g., Culbreath v. Johnson, 427 So.2d 705, 707-08 (Miss. 1983);Blakeney v. Blakeney, 244 So.2d 3, 4 (Miss. 1971); Anderson v.Watkins, 208 So.2d 573, 575 (Miss. 1968); and Griffith,Mississippi Chancery Practice § 674 (2d ed. 1950). This is so whether the finding relates to an evidentiary fact, e.g., did Pamela sleep with a man to whom she was not married, or ultimate fact, e.g., was Pamela a fit and suitable person to have the care and custody of her child. See Pullman-Standard v. Swint,456 U.S. 273, 285-87, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66, 78-9 (1982).
There is a corollary principle which should also be noted here. With respect to issues of fact where the chancellor made no specific finding, we are required by our prior decisions and by sound institutional considerations to assume that the chancellor resolved all such fact issues in favor of *Page 1144 
appellee. Harris v. Bailey Avenue Park, 202 Miss. 776, 791,32 So.2d 689, 694 (1947).
 IV.
The threshold factual inquiry presented to the Chancery Court was whether there had been, since the date of the original custody decree of July 11, 1978, a material change in circumstances which has adversely affected the child, as distinguished from either of his parents, in such a way as to necessitate a modification of the original custody decree.
One change of a transitory nature has occurred. At the time of the 1978 decree, Pamela was living in Starkville with her son, Chase. In February of 1980 Pamela and Chase moved to Houston, Texas. No doubt this created a certain strain on Hollis' visitation privileges and on Chase's access to his father's love. Yet in this day and time many persons must change their residence, sometimes even cross-country, in order to obtain suitable employment, and for other bona fide reasons. Surely, it must be the law that such a change of residence by the person having custody is not a material change in circumstances which would justify a reconsideration of an order for primary custody. See Case v. Stolpe, 300 So.2d 802, 805 (Miss. 1974); Brocatov. Walker, 220 So.2d 340 (Miss. 1969).
Second, the parties have vigorously contested whether Pamela's post-divorce romantic interests can be considered a change of circumstances. Though at times the briefs recognize it, surely this debate misses the point. Whether Pamela developed a romantic relationship with another man after the divorce is relevant to the extent — and only to the extent — that such a relationship can be shown to have had a definite adverse effect on the child. We emphasize again that we are concerned with the possibility of a material change in the child's circumstances, a change that substantially adversely affects the child.
What concerns us here is that each psychologist who testified suggested that Chase was experiencing emotional problems. There being no evidence of his having such problems back in 1978, it is argued that the fact that such problems have arisen constitutes a material change in circumstances adversely affecting the child within the rule of law stated above. Our cases on the subject do not arise in the precise factual context we confront here.
Case v. Stolpe, 300 So.2d 802 (Miss. 1974) is arguably close.Case involved a child custody modification proceeding, not an original divorce action. In Case the minor child was nine years of age. The evidence reflected that the divorced wife lived with another man (whom she subsequently married). This was charged by her ex-husband to be grounds for change of custody. The chancery court under these circumstances refused to alter the custody. This Court affirmed, stating "[a]n examination of the record in this case convinces us that there is actually no material change in the condition of the parties since the former decree of the chancery court, . . ." 300 So.2d at 805.
In a modification case where the child was much younger than that here, this Court likewise affirmed a chancellor's refusal to seize upon the mother's indiscretions and hold that she was morally unfit to have custody of the child.[2] Rodgers v.Rodgers, 274 So.2d 671, 674 (Miss. 1973).
A consideration of the holdings stated in these cases, as well as the premises underlying those holdings, compels the conclusion that the chancellor correctly understood and applied the law in this case. If the mother's indiscretions with another man do not, in a divorce action, constitute a per se barrier to an award of child custody,[3] it *Page 1145 
makes no sense that such a barrier should be erected in custody modification proceedings.[4] Similarly, it hardly seems rational that the age of the child should per se lead to any particular result.
In the final analysis, we are faced with a divorce decree entered in 1978 which awarded primary custody to the mother based upon a joint, sworn representation to the court that "the parties feel that the best interest of said child would be that the mother have the primary custody". The chancellor faced the question of whether since that time there had been a material change of circumstances adversely affecting the child and necessitating a change of custody. Crediting the substantial evidence that Pamela remained a fit and suitable person to have custody of her son, the chancellor thus held that there was no such material adverse change in circumstances. Not only are we not prepared to say that he was manifestly wrong in his findings on these issues of ultimate fact, we are disposed to believe that he probably reached the correct decision.
We emphasize that the evidence was conflicting, first, on the question of what was causing the emotional problems found and, second, whether those problems, i.e. material change in circumstances, necessitated a modification of the custody decree. Suffice it to say that the evidence offered by Pamela credibly showed that Chase's emotional problems were, first, the product of the divorce itself and, second, his realization that he was caught in the midst of a custody battle between his parents. There is further credible evidence in the record through both Pamela's psychologist and other witnesses (a) that the child's emotional problems can best be dealt with by keeping him in the custody of his mother and (b) that Pamela is a fit and suitable, if not perfect, person to have the care and custody of the child. Under these circumstances, and under our familiar rules cited above, we affirm.
 V.
Hollis also argues that the Chancery Court should have expressly provided in a decree that his son be given professional psychological care and treatment. He relies upon the testimony of the psychologists, both of whom indicated that Chase may well need psychological care and treatment in the future. Hollis points to our statute which provides that the chancellor may
 make all orders touching the care, custody and maintenance of the children of the marriage, and . . . afterwards, on petition, change the decree, and make from time to time such new decrees as the case may require Miss. Code Ann. § 93-5-23 (Supp. 1982).
Assuming arguendo that this statute is broad enough to empower the chancellor to order such treatment for the child, the power was certainly one which was committed to the chancellor's sound discretion. Consistent with the chancellor's general findings that the child's needs were being met and that the mother was a fit person to continue custody, we certainly cannot say *Page 1146 
that the chancellor abused his discretion in failing to decree expressly that psychological care and treatment be obtained.
 VI.
Hollis further complains of certain provisions regarding his visitation rights. In view of the fact that the parties are now separated by no inconsiderable mileage, the court did modify the visitation portions of the original decree and specifically award Hollis two day visitation privileges during the Thanksgiving holidays and spring vacations in odd numbered years. Hollis objects urging that the two day limitation is logistically unworkable because of the distance now separating the parties.
The specification of times for visitation rights is committed to the broad discretion of the chancellor. Buntyn v. Smallwood,412 So.2d 236, 238 (Miss. 1982). There was certainly no abuse of discretion here. If in fact these or any other provisions of the custody arrangements spelled out in the decree present practical difficulties, we refuse to believe that these two mature adult persons cannot come to an agreement — one based upon the child's best interests, rather than their own selfish desires.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.
[1] That on review we may sit as "chancellors", as some have suggested [Eggleston v. Landrum, 210 Miss. 645, 654,50 So.2d 364, 367 (1951); Case v. Stolpe, 300 So.2d 802, 804 (Miss. 1974)] means only that we have a conscience, both collectively and individually, and that we too must bring to our consideration of cases such as this the same qualities of wisdom, patience, tolerance and humanity. It does not mean that the rules regulating the scope of review, rules long embedded in the positive law of this state, have been relaxed.
[2] Factually, this case is wholly distinguishable from Pikev. Pike, 317 So.2d 897 (Miss. 1975). It may be that secularizing forces have not yet brought us to the point where we wholly embrace Pamela's behavior. Still no objective observer could equate Pamela's conduct with the "lewd and lascivious" behavior of Martha Nell Pike held sufficient to justify a change of custody there. 317 So.2d at 898-99.
[3] In divorce actions, as distinguished from proceedings for modification of custody, sexual misconduct on the part of the wife is not per se grounds for denial of custody. A husband may upon proof of his wife's adultery be granted an absolute divorce on that grounds and yet in the same case custody of the children may be awarded to the mother. This is because the test for custody is different from the test to be applied in determining whether the divorce should be granted. Child custody determinations are made by reference to the best interest of the child. Our cases well recognize that it may be in the best interest of a child to remain with its mother even though she may have been guilty of adultery. See Yates v. Yates, 284 So.2d 46, 47 (Miss. 1973); Anderson v. Watkins, 208 So.2d 573 (Miss. 1968); Schneegass v. Schneegass, 194 So.2d 214 (Miss. 1966).
[4] Our view of custody modifications articulated above is comparable to that employed in other states in similar fact situations. See, e.g., Roberson v. Roberson, 370 So.2d 1008, 1011 (Ala. Civ. App. 1979) ("a mother will not be denied custody for every act of indiscretion or immorality", especially where no detrimental effect on the welfare of the child has been shown);Rippon v. Rippon, 64 Ill. App.3d 465, 21 Ill.Dec. 135,381 N.E.2d 70, 73 (1978) ("indulgence in moral indiscretions alone is not grounds for a change of custody where the children are leading a normal life").
 *Page 401