464 So.2d 1155 (1985)
Timothy Paul SMITH
v.
Sandra Lynn TODD, formerly Sandra Lynn Smith.
No. 54590.
Supreme Court of Mississippi.
February 20, 1985.
*1156 William D. Boerner, Boerner & Underwood, Brookhaven, for appellant.
Richard E. Stratton, III, Brookhaven, for appellee.
Before WALKER, P.J., and HAWKINS and ROBERTSON, JJ.
WALKER, Presiding Justice, for the Court:
This is an appeal from an order of the Chancery Court of Lincoln County which modified the divorce decree of the parties. Primary custody of the parties' two children was changed from Timothy Paul Smith, appellant, and awarded to Sandra Lynn Todd, appellee.
The two children whose custody is in question are Kimberly Anne Smith, who was born December 9, 1976, and Jeremy Paul Smith, who was born October 7, 1978.
On May 3, 1979 appellee left appellant and her two children and moved in with Gregory Neal Todd in Vicksburg, Mississippi. Appellant filed for divorce, and on September 7, 1979 a final divorce decree was granted. Under the terms of the final decree appellant was awarded permanent care, custody and control of the two children, subject to reasonable visitation rights given to appellee.
Appellee married Mr. Todd and moved to Rodeo, California, a suburb of San Francisco, where they live in a two bedroom, one bath apartment. Appellee does not work and has not since her remarriage.
Mr. Smith also remarried. He and his new wife and the children lived in a fourbedroom, two bath house that was being built when he was married to appellee. This home is near the house that the Smiths occupied prior to the divorce. The paternal grandparents live a short distance from Mr. Smith's home, and the maternal grandparents live in the same county. Mr. Smith works as a crane operator on an offshore drilling rig, working seven days on and seven days off. He was working offshore during his marriage to appellee and continues to do so.
Mr. Smith and his wife also have a child, Timothy Chad Smith, born November 25, 1981.
Nearly three years after the divorce, Mrs. Todd filed a petition to modify the divorce decree. She sought permanent custody of the minor children who were then under the ages of six and four years. Appellant filed an answer denying that there had been any material change in circumstances warranting a change in custody.
A hearing was held September 15, 1982 and the Chancery Court of Lincoln County changed the custody of the children from appellant to appellee. The court felt bound by this Court's decision in Buntyn v. Smallwood, 412 So.2d 236 (Miss. 1982).
Subsequent to the Chancery Court decision and after appeal had been perfected to this Court, the children have been voluntarily returned to Mr. Smith.
*1157 Mr. Smith argues:
THE COURT'S DECISION TO CHANGE THE CUSTODY OF THE TWO MINOR CHILDREN FROM THEIR FATHER TO THEIR MOTHER WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE PRESENTED AT SAID HEARING AND AMOUNTED TO AN ABUSE OF DISCRETION.
Well-established rules guide the courts in child custody cases.
Once custody of a child has been awarded to one parent a decree for child custody should not be changed from one parent to the other unless subsequent to the original decree there has been a material change in circumstances and then only after findings based on substantial evidence that such change of circumstances materially affects the children's welfare adversely. Kavanaugh v. Carraway, 435 So.2d 697 (Miss. 1983); Cheek v. Ricker, 431 So.2d 1139 (Miss. 1983); Bowden v. Fayard, 355 So.2d 662 (Miss. 1978); O'Neal v. Warden, 345 So.2d 610 (Miss. 1977); Sistrunk v. Sistrunk, 245 So.2d 845 (Miss. 1971); Sanderson v. Seaney, 224 So.2d 862 (Miss. 1969); Brocato v. Walker, 220 So.2d 340 (Miss. 1969).
Also, findings of fact made by a chancellor may not be set aside or disturbed on appeal unless manifestly wrong. See, e.g., Cheek v. Ricker, 431 So.2d 1139 (Miss. 1983); Culbreath v. Johnson, 427 So.2d 705 (Miss. 1983); Blakeney v. Blakeney, 244 So.2d 3 (Miss. 1971). A corollary principle is that with respect to issues of fact where the chancellor made no specific finding we are required to assume that the chancellor resolved all such fact issues in favor of appellee. Marascalco v. Marascalco, 445 So.2d 1380 (Miss. 1984); Cheek v. Ricker, 431 So.2d 1139 (Miss. 1983); Harris v. Bailey Avenue Park, 202 Miss. 776, 32 So.2d 689 (1947).
In considering modification of child custody, the chancellor must allow full and complete proof with respect to all circumstances and conditions directly or indirectly related to the care and custody of the children, existing at the time of the original divorce decree and at the time of the modification hearing. Marascalco v. Marascalco, 445 So.2d 1380, 1382 (Miss. 1984).
The chancellor in his opinion stated:
The Court has been concerned for some time about such a situation as this was going to ultimately arise. I read the Bunton (sic) case when it came out in April and shuddered, because I was aware of the fact that we live in an area where many of our people work offshore and where parents have only partial time to be with their children. And I think the guts of that case is the statement of the court that the child in that situation was with the stepmother more than 50% of the time, which, in effect, seemed to invoke the old rule that either parent, if fit, is entitled to the child as against the claims of any other party. And when you have got a situation where one parent is fit and capable of providing for the care and keeping of a child, then, according to the court's logic and reasoning, it appears that they are going to place that child there.
The chancellor apparently felt that under this Court's decision in Buntyn that the father's employment was the decisive factor. It was but one of many factors which lead to the decision in that case. In each case the chancellor should apply the law rather than attempt to match fact patterns. Buntyn was decided on the unique facts of that case and stands alone. This Court never intended Buntyn to stand for the proposition that offshore workers, truck drivers, or others whose professions require them to be away from home for extended periods of time should be deprived of the custody of their children.
As the Court in Buntyn wrote: "No hard and fast rule can be applied to these most difficult of cases." 412 So.2d 238.
In all child custody decisions this Court has continually returned to the rule that the paramount consideration is the best interest of the child. See Buntyn, 412 So.2d 238 and the cases cited there. In *1158 Albright v. Albright, 437 So.2d 1003, 1005 (Miss. 1983), this Court list many factors which could be considered in determining custody:
We reaffirm the rule that the polestar consideration in child custody cases is the best interest and welfare of the child. The age of the child is subordinated to that rule and is but one factor to be considered. Age should carry no greater weight than other factors to be considered, such as: health, and sex of the child; a determination of the parent that has had the continuity of care prior to the separation; which has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of the parent and responsibilities of that employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of parents; the home, school and community record of the child; the preference of the child at the age sufficient to express a preference by law; stability of home environment and employment of each parent, and other factors relevant to the parentchild relationship.
Marital fault should not be used as a sanction in custody awards. Relative financial situations is not controlling since the duty to support is independent of the right to custody. Differences in religion, personal values and lifestyles should not be the sole basis for custody decisions.
The list was surely not intended to be exhaustive but a beginning point, and employment of each parent is only one of the factors listed to be considered.
Looking at the facts of this case, it is clear that the chancellor erred. Mr. Smith's employment is the same as it was at the time of the original decree and as such is no change of circumstance, material or otherwise. Even if there had been a change there was no showing that the children's welfare had been adversely affected. If anything the record shows that Mr. Smith has provided a more stable home environment than since originally being granted custody.
The greatest change seems to have been in Mrs. Todd's desire for custody of the children. This alone is insufficient. As stated in Bowden v. Fayard, 355 So.2d 662, 664 (Miss. 1978):
It is important that children have as much stability as possible when their parents are divorced. Once the court has determined which parent should have custody of the children, then they should be allowed the stabilizing influence of knowing where home is. A material change of circumstances of the party not having custody of the children is not in and of itself enough to warrant a change of custody. There must be a showing that a change of circumstances has occurred which materially affects the children's welfare.
Mrs. Todd testified that "custody should be given to me because I can take better care of them. I could be with them all the time." She testified that she was better able to care for the children than in September 1979. At the same time she also said that she was unable to afford to pay her attorney.
Mrs. Todd testified that she had checked out a church and school for the children, but that she had been to the church only once and her husband did not go. Mrs. Todd's husband did not come to the hearing, but she indicated that he was willing for her to have custody of the children.
When asked if she knew of anything whatsoever concerning the children's present circumstances that was adverse to them, Mrs. Todd said, "No."
In addition to Timothy Smith, his wife Linda Smith and his parents testified. The testimony was that Linda Smith treated the children as her own with no showing of partiality and that the children called her "mama" without being asked. There was corroborating testimony that the family attends church together regularly. The daughter was also enrolled in kindergarten. The paternal grandparents testified that *1159 they visit their son, his wife and children almost daily.
The record is void of any indication of a material change in circumstance or of any adverse affect on the children as a result of their father having custody. For this reason, the decision of the chancellor should be reversed and the former decree granting custody of Kimberly Anne Smith and Jeremy Paul Smith to Timothy Paul Smith is reinstated.
REVERSED AND FORMER DECREE REINSTATED
PATTERSON, C.J., ROY NOBLE LEE, P.J., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.