718 So.2d 1126 (1998)
John Randall SUESS, Appellant,
v.
Laurie Robertson SUESS, Appellee.
No. 97-CA-00103 COA.
Court of Appeals of Mississippi.
July 14, 1998.
*1127 J. Mark Shelton, Shelton & Weeden, Tupelo, for Appellant.
Gerald R. McLemore, Corinth, for Appellee.
Before BRIDGES, C.J., and HERRING and SOUTHWICK, JJ.
HERRING, Judge, for the Court:
¶ 1. John Randall Suess appeals from the judgement of the Monroe County, Mississippi, Chancery Court in which his request for modification of his visitation schedule with his two minor children pursuant to a judgment previously entered by the chancery court was denied. Following our review of the record, we reverse the judgment of the Monroe County Chancery Court and remand this action for further proceedings.

A. THE FACTS
¶ 2. A final judgment of divorce ending the marriage of John and Laurie Suess was entered by the Monroe County Chancery Court on July 28, 1995. On that same day, the parties also entered into an agreement which dealt with the division of marital property, custody of their two minor children, child support, and alimony. As shown by their written agreement, the parties agreed to share legal custody of their two daughters, Jennifer and Jessica, and also agreed to a detailed visitation schedule. The only issue upon which the parties could not agree was whether or not Mr. Suess should be granted mid-week, overnight visitation with Jennifer and Jessica in addition to his weekend visits with the children. At the time of the divorce, Laurie Suess resided in Amory, Mississippi, with the two children, while John Suess lived in Tupelo, Mississippi, and worked in Amory. In a supplemental order dated October 19, 1995, the chancellor granted Mr. Suess weekday visitation with Jennifer and Jessica beginning at 5:00 p.m. on Wednesday of each week and ending the following morning when he took the children to school.
¶ 3. The record discloses that Mrs. Suess was reluctant to allow Mr. Suess to have the children for overnight visitation on Wednesday evenings. According to Mr. Suess, he would often arrive at his former wife's home to pick up the children in accordance with the court's judgment and find that Mrs. Suess would not permit him to take the children home with him. He testified that, instead, Mrs. Suess offered to allow him to visit with the children for a couple of hours on Tuesdays and Thursdays. Mrs. Suess testified that she denied Mr. Suess the Wednesday visitations on advice of counsel and on the basis that since she had appealed the decision of the chancery court she did not have to comply with the terms of the supplemental order until it became final once the appeal had been concluded.
¶ 4. Mr. Suess obtained a "writ of assistance" from the chancellor on November 30, 1995, which forced Mrs. Suess to comply with the chancery court's order allowing the Wednesday evening visitation by Mr. Suess with his children. Mr. Suess testified that after the writ of assistance was issued, Mrs. Suess reluctantly complied with the term of the supplemental order and allowed him to have *1128 his Wednesday evening visitation with the two children. He also testified that he incurred attorney's fees in the amount of $350 in obtaining the writ of assistance.
¶ 5. Mrs. Suess graduated from Mississippi University for Women and thereafter moved from Amory to Corinth, Mississippi, in August, 1996. As a result, Mr. Suess filed a motion for modification of the visitation schedule originally set by the trial court in these proceedings. He contended that his former wife's relocation forced him to lose twenty-nine days in visitation with the children because of the impracticability of traveling so far during the week to visit overnight with them and then taking them to school the following morning. He testified that the drive from Amory to Corinth was approximately one hundred miles, and his drive home from Corinth to Tupelo was sixty-five miles. Thus, he concluded that overnight visitation during the week would be impractical and not in the best interests of the children.
¶ 6. In his motion for modification of visitation[1] and for other relief, Mr. Suess requested that the original visitation schedule be modified in order to grant him additional time with the children during the Christmas holidays and spring break periods of each year. In addition, he asked that his weekend visitation with the children originally set from 5:00 p.m. on Fridays and run through 5:00 p.m. on Sundays be increased to a period beginning at 5:30 p.m. on Fridays through 8:00 p.m. on Sundays. Mr. Suess also requested that he be granted visitation with each of the children, on an alternating basis, for one weekend per month in addition to the alternating weekend visits that he already enjoyed with the children together. Mr. Suess also asked the chancery court to make Mrs. Suess responsible for transporting the children to his home for his weekend visits every other time the visits were to occur. In addition, he requested that she retrieve the children from his home after these weekend visits. Finally, Mr. Suess asked the court to award him the attorney's fees which he incurred as a result of his being required to file the motion for modification. He also asked to be awarded the attorney's fees which he incurred in obtaining the writ of assistance.
¶ 7. Following a hearing on December 10, 1996, in which testimony was elicited from both parties, the chancellor issued his opinion on December 18, 1996, and ruled that no material change in circumstances had occurred requiring a change in the visitation schedule. The chancellor set aside his previous order awarding weekday visitation to Mr. Suess and noted that when the court previously granted the weekday visitation to him, it considered the award to be temporary. The court was aware that Mrs. Suess was close to graduation from college and that she would be moving from Amory when she found employment. Mr. Suess filed a motion for reconsideration of the chancellor's decision, but this motion was denied. He now appeals to this Court.

B. THE ISSUES
¶ 8. On appeal, Mr. Suess raises the following issues which are taken verbatim from his brief:
I. THAT THE CHANCELLOR'S ORDER DENYING APPELLANT'S REQUEST FOR REIMBURSEMENT OF ATTORNEY'S FEES PAID TO OBTAIN THE WRIT OF ASSISTANCE WAS IN ERROR.
II. THAT THE CHANCELLOR'S ORDER DENYING APPELLANT'S REQUEST FOR ADDITIONAL PERIODS OF VISITATION WITH HIS MINOR CHILDREN WAS IN ERROR.
III. THAT THE CHANCELLOR APPLIED AN INCORRECT LEGAL STANDARD TOWARD THE ISSUE OF APPELLANT'S REQUEST FOR ADDITIONAL PERIODS OF VISITATION WITH THE MINOR CHILDREN.
IV. THAT THE CHANCELLOR'S ORDER DENYING APPELLANT'S REQUEST THAT APPELLEE BE REQUIRED TO PROVIDE ONE-HALF OF THE TRANSPORTATION NECESSARY FOR APPELLANT TO EXERCISE HIS *1129 RIGHTS TO VISITATION WITH THE MINOR CHILDREN WAS IN ERROR.

C. THE ANALYSIS
¶ 9. We will address the first and third issues raised by Mr. Suess since we are reversing and remanding this action for further proceedings.
I. DID THE CHANCELLOR ERR IN DENYING APPELLANT'S REQUEST FOR REIMBURSEMENT OF ATTORNEY'S FEES INCURRED IN OBTAINING THE WRIT OF ASSISTANCE?
¶ 10. The award of attorney's fees in domestic relations matters is entrusted to the sound discretion of the trial court. Poole v. Poole, 701 So.2d 813, 818 (Miss.1997). "Unless the chancellor is manifestly wrong, his decision regarding attorney fees will not be disturbed on appeal." Bredemeier v. Jackson, 689 So.2d 770, 778 (Miss.1997). We will not reverse a chancellor's decision as to attorney's fees barring an abuse of discretion or manifest error. Sarver v. Sarver, 687 So.2d 749, 756 (Miss.1997).
¶ 11. Mr. Suess argues that he is entitled to an award of attorney's fees for the sum he spent in obtaining the writ of assistance to enforce the chancery court's order allowing him weekday visitation with his children. He also contends that the chancery court's refusal to award him attorney's fees was inequitable. Finally, he contends that Mrs. Suess unlawfully denied him visitation with the children in violation of the chancery court's order and "has been required to suffer no ill effects." Moreover, the Appellant asserts that the chancellor's refusal to award him attorney's fees was essentially an approval of his former wife's violation of the court-ordered visitation and that the chancery court[`s] ruling "sends the wrong message to [Mrs. Suess] and to others similarly situated...." On appeal, Mrs. Suess counters that Mr. Suess is not entitled to an award of attorney's fees primarily because no request for the fees was made when the writ of assistance was obtained. Thus, she asserts that Mr. Suess's request for these attorney's fees one year later in his motion for modification of his visitation rights was untimely. Mrs. Suess also contends that Mr. Suess failed to prove that the $350 fee which he incurred was reasonable and necessary, or that he was financially unable to pay the fee of his attorney for obtaining the writ of assistance.
¶ 12. Mr. Suess provides us with no authority to establish that he is entitled to an award of attorney's fees in this instance. The Mississippi Supreme Court has ruled that the "failure to cite any authority in support of ... assignments of error precludes this Court from considering these issues on appeal." Grey v. Grey, 638 So.2d 488, 491 (Miss.1994); see also Bonderer v. Robinson, 502 So.2d 314, 316 (Miss.1986) (ruling that supreme court will not consider an assignment of error regarding attorney's fees where appellant failed to argue and cite authority on appeal). Thus, we are not obliged to address this issue on appeal. Nonetheless, after a review of the record, we would be hard pressed to say that the chancellor abused his discretion or committed manifest error when he denied the Appellant an award of attorney's fees.
¶ 13. "When the court denies a spouse's petition for contempt, no award of attorneys fees is warranted." Varner v. Varner, 666 So.2d 493, 497 (Miss.1995) (citing Setser v. Piazza, 644 So.2d 1211, 1216 (Miss. 1994)). Likewise, if a petitioner is successful on a contempt claim, "it follows, [he] is eligible for an award of attorney fees." Varner, 666 So.2d at 498. However, the fact that the successful petitioner is eligible for an award of attorney's fees does not automatically entitle him to such an award. The chancellor enjoys substantial deference in his decision as to attorney's fees, and we will not reverse the decision of a chancellor regarding attorney's fees where he has not abused his discretion or committed manifest error. Setser, 644 So.2d at 1216. Moreover, the failure "to present any evidence concerning the McKee v. McKee, 418 So.2d 764, 767 (Miss.1982), factors ... also prevent[s] an award of attorney fees." Id. The Mississippi Supreme Court enunciated in McKee the factors for the trial courts to consider when determining the amount of attorney's fees to award in domestic cases. Those factors include: (1) *1130 the relative financial ability of the parties, (2) the skill and standing of the attorney employed, (3) the nature of the case and novelty and difficulty of the questions at issue, (4) the degree of responsibility involved in the management of the cause, (5) the time and labor required, (6) the usual and customary charge in the community, and (7) the preclusion of other employment by the attorney due to the acceptance of the case. Id. In the case sub judice, Mr. Suess presented no evidence addressing the McKee factors. The record is devoid of any indication that Mr. Suess was without the means to pay the fees, and Mr. Suess simply testified that he was entitled to an attorney's fee award because Mrs. Suess defied the chancellor's order in regard to his weekday visitation with the children. Thus, he was required to obtain the writ of assistance. Mrs. Suess testified that Mr. Suess's income was substantially more than her income and that she was without the ability to pay the fees.
¶ 14. In conclusion, Mr. Suess wholly failed to submit any evidence on the issue of attorney's fees at trial. Thus, we are without authority to reverse the decision of the chancellor in this regard since we cannot say that he abused his discretion or committed manifest error. Moreover, his request for attorney's fees in regard to the writ of assistance was untimely. This issue has no merit.
III. DID THE CHANCELLOR APPLY AN INCORRECT LEGAL STANDARD IN RULING UPON THE APPELLANT'S REQUEST FOR ADDITIONAL PERIODS OF VISITATION WITH THE MINOR CHILDREN?
¶ 15. An appellate court defers to the chancellor on factual issues and will not reverse the chancellor unless (1) the judge's findings are not supported by substantial credible evidence, (2) unless the chancellor has either committed manifest error, or (3) unless the chancellor applied an erroneous legal standard. Bredemeier v. Jackson, 689 So.2d 770, 775 (Miss.1997). Moreover, the chancellor has broad discretion in determining appropriate visitation between a parent and a child, as well as any limitation on such visitation. Harrington v. Harrington, 648 So.2d 543, 545 (Miss.1994); see also Miss. Code Ann. § 93-5-23 (Supp.1996). The chancellor must consider the best interests of the child in matters involving visitation and be sensitive to the rights of the non-custodial parent, while at the same time recognizing the need for the non-custodial parent to maintain a healthy, loving relationship with his child. Harrington, 648 So.2d at 545.
¶ 16. In Cox v. Moulds, 490 So.2d 866, 869 (Miss.1986), the Mississippi Supreme Court set the standard for a trial court to follow when confronted with a request to alter a parent's visitation schedule with a minor child. In Cox, our supreme court stated that in order to modify the visitation schedule "[a]ll that need[s][to] be shown is that there is a prior decree providing for reasonable visitation rights which isn't working and that it is in the best interests of the children." Id. Cox was seeking a modification of the visitation schedule set out in his original judgment of divorce on the ground that the schedule of visitation was vague. He sought to have the schedule modified to give specific times, dates and places of visitation. In ruling on Cox's motion to modify, the court further stated:
In cases such as this our familiar change in circumstances rule, see, e.g., Cheek v. Ricker, 431 So.2d 1139, 1144 (Miss.1983), has no application. This is because the Court is not being asked to change the permanent custody of the children. Sistrunk v. McKenzie, 455 So.2d 768, 770 (Miss.1984). All that need be shown is that there is a prior decree providing for reasonable visitation rights which isn't working and that it is in the best interests of the children as fostering a positive and harmonious relationship between them and their divorced parents to have custody provisions made specific rather than flexible and attendantly vague.
Cox, 490 So.2d at 869 (emphasis added).
¶ 17. In this case, the chancery court used the wrong legal standard in making its decision when it stated: "This Court is of the opinion that a material change of circumstance has not occurred which would warrant a modification in the agreement of the parties...." (emphasis added). Because this case involved a modification of Mr. Suess's *1131 visitation schedule with his children and did not involve a request for change of custody, the chancellor should have employed the legal standard espoused by the Mississippi Supreme Court in Sistrunk v. McKenzie, 455 So.2d at 770, and in Cox v. Moulds, 490 So.2d at 869. Thus, we reverse and remand this case for further proceedings consistent with this opinion.
¶ 18. THE JUDGMENT OF THE CHANCERY COURT OF MONROE COUNTY IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE DIVIDED EQUALLY BETWEEN THE APPELLANT AND THE APPELLEE.
BRIDGES, C.J., THOMAS, P.J., and COLEMAN, DIAZ, HINKEBEIN, KING, PAYNE and SOUTHWICK, JJ., concur.
McMILLIN, P.J., concurs with separate written opinion joined by PAYNE and SOUTHWICK, JJ.
McMILLIN, Presiding Judge, concurring:
¶ 19. I agree with the result reached by the majority. As to the denial of a request for attorney's fees for successfully pursuing an earlier action for a writ of assistance to enforce visitation, I think it is sufficient to say that the issue was not properly before the court. The claim should have been pursued in the earlier proceeding, and Mr. Suess's failure to do so bars any subsequent claim under the doctrine of res judicataa doctrine that bars both those issues that were actually litigated and those which properly should have been but were not. Little v. V & G Welding Supply, Inc., 704 So.2d 1336, 1337 (Miss.1997).
¶ 20. I disagree that the McKee factors must be considered when assessing attorney's fees in a proceeding to compel a reluctant litigant to comply with a court order, whether through an exercise of the court's contempt power or by way of a writ of assistance. McKee v. McKee, 418 So.2d 764 (Miss.1982). A party's entitlement to attorney's fees for successfully forcing a party to obey the court's lawful orders exists in all forms of chancery litigation and is not limited to domestic relations cases. It is of a different derivation from the principle that permits a financially destitute domestic relations litigant to extract the costs of litigation from the offending spouse if a need can be demonstrated under the McKee decision. It is the unfairness of requiring a litigant to expend his resources to enforce an already-existing legal obligation of another that is the focus when attorney's fees are considered in a contempt proceeding and the inability of the petitioner to finance the litigation is not a consideration.
PAYNE and SOUTHWICK, JJ., join this separate written opinion.
NOTES
[1] The request for modification of the visitation schedule should have been made by a complaint or petition rather than by a motion. See M.R.C.P. 81(d)(2) & (3) and its comment.